[Cite as *In re Maj.A.*, 2018-Ohio-575.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


In re Maj.A., Mal.A.
Court of Appeals Nos. L-17-1172
L-17-1173
L-17-1174

Trial Court Nos. JC 17261062
JC 17262940


**DECISION AND JUDGMENT**

Decided: February 13, 2018

* * * * *

Stephen D. Long, for appellant mother.

Adam H. Houser, for appellant father.

Kevin J. Ankney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellants, M.B. (mother), and D.A. (father), have filed separate appeals

from the June 16, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile

Division, granting permanent custody of Maj.A. and Mal.A. to Lucas County Children Services ("LCCS"). For the reasons that follow, we affirm this consolidated appeal.

{¶ 2} On March 2, 2017, LCCS filed a complaint in dependency and neglect and a motion for permanent custody as to appellants' two minor children Maj.A. and Mal.A. The complaint alleged that LCCS had been involved with the family since 2010, and that mother had two older children who were in legal custody of relatives. The main reasons for LCCS' past and current involvement were mother's substance abuse (opiates) and domestic violence between mother and father. The complaint stated that in 2014, Maj.A.'s cord blood tested positive for methadone and she was placed on morphine for severe withdrawal. During her pregnancy with Maj.A., appellant tested positive for illegal substances several times. The complaint stated that in 2015, mother was able to keep Mal.A. upon his birth because she was compliant with services including substance abuse, mental health, parenting, and housing. Maj.A. was returned to mother and protective supervision of both children was terminated in November 2016.

{¶ 3} The complaint stated that on February 16, 2017, LCCS received a referral regarding a domestic dispute between mother and father; mother was 21 weeks pregnant at the time, physical violence was involved, and father was the alleged perpetrator. Mother admitted to the incident. On February 21, 2017, a second referral was received alleging that mother was using fentanyl and Xanax because she had stopped using methadone. Mother admitted to the drug use and on February 24, 2017, tested positive for fentanyl and methadone.

2.

**{¶ 4}** At a shelter care hearing held the same day, appellants agreed to interim temporary custody being awarded to LCCS. On May 22, 2017, the children's maternal great-grandfather filed a pro se complaint for custody in a separate action.

**{¶ 5}** On May 25, 2017, the adjudication hearing was held. Mother and father both testified on cross-examination. Mother admitted the allegations in the complaint. Mother was also questioned about and denied leaving her children in father's care for three to four weeks while she was hospitalized. Conversely, father testified that he had the children during that time. Father denied the February 9, 2017 domestic violence incident; he stated that on that date he was trying to drop off the children so he could go to work. According to father, he realized that she was using drugs again so he left the house with the children. He denied breaking mother's phone and throwing items in the home.

**{¶ 6}** A Toledo Police officer testified regarding the February 11, 2017 domestic violence report mother filed against father. The officer stated that mother had been hiding at a friend's house because she was afraid of father. The officer stated that she showed him her cracked cell phone screen. He further stated that he found her story credible; she was afraid and aware of the consequences of making the report with both father and LCCS.

**{¶ 7}** Several exhibits were admitted into evidence including judgment entries relating to mother's prior LCCS' cases, the police report documenting the February 9, 2017 incident, records pertaining to mother's hospitalization for withdrawal, and drug

screen reports. The court then found the children to be dependent by clear and convincing evidence.

{¶ 8} The matter then proceed to disposition with the court first taking judicial notice of the evidence presented during adjudication as well as deeming the prior exhibits admitted. It was also noted that the father would not be present for the hearing.

{¶ 9} An LCCS caseworker testified that she was the family's caseworker in the prior case, from November 2014 to October 2016. The caseworker stated that substance abuse, parenting, housing, mental health, and income were all concerns addressed in the prior case plan. The caseworker stated that mother complied with services, was reunified with her children, and, ultimately, protective supervision was terminated.

{¶ 10} As to father, the caseworker stated that he minimally engaged in case plan services. He had a substance abuse assessment, inconsistently attended treatment, and was discharged unsuccessfully. Father failed to complete objectives pertaining to parenting, domestic violence, housing, and income.

{¶ 11} The caseworker stated that mother and her children lived with the maternal great-grandfather who also provided financial support and transportation. She stated that according to mother, great-grandfather frequently stayed at his girlfriend's house and had hobbies that occupied his time.

{¶ 12} A second caseworker with LCCS testified that she became the family's caseworker in October 2016. She stated that the current concerns with the family involve mother's substance abuse and domestic violence perpetrated by father.

4.

{¶ 13} The caseworker testified that just three weeks after the agency officially closed the family's case, LCCS received referrals regarding a domestic violence incident and mother's substance abuse. She stated that mother tested positive for fentanyl and methadone on February 24 and March 3, 2017. As to father, the caseworker stated that she discussed the domestic violence concerns with him; he denied any issues. Father further stated that he had the children for the month of February; mother denied this. The caseworker testified that mother admitted to staying with father for three days following the domestic violence incident and prior to her hospital admittance because she had nowhere else to go. The caseworker testified about unsuccessful attempts to find appropriate relative placement for the children. She stated that the maternal great-grandfather was mentioned by the guardian ad litem ("GAL") but that she had not spoken with him.

{¶ 14} The caseworker stated that she believed that LCCS should be awarded permanent custody of the children due to mother's substance abuse history, father's failure to complete any prior case plan services, and domestic violence between the parties. She further stated that the children were doing well in their current placement and that the foster parents were interested in adoption.

{¶ 15} On cross-examination and regarding mother, the caseworker testified that upon her discharge from the hospital, mother immediately went back into the methadone program. She further acknowledged that domestic violence services were not part of any prior LCCS' involvement.

5.

{¶ 16} The children's great-grandfather, J.A., testified next. He stated that he filed a motion for legal custody of the children because he wanted to "keep the children in the family." He stated that Maj.A. resided in his home upon reunification with mother and Mal.A. resided there from birth and until they were taken into LCCS' custody. J.A. denied staying at his girlfriend's house; he stated that at 11:00 p.m., he gets "sent home." As to his level of involvement with the children, J.A. stated that he would read to and play with them approximately every other day or a few days in a row. J.A. stated that he never watched them more than an hour-and-a-half at-a-time because he felt that mother needed to take care of her own children. He had also provided transportation to the family at different times. J.A. stated that he is prepared to care for and protect the children if he is awarded legal custody. He indicated that two of his daughters were planning on helping with their care.

{¶ 17} J.A. testified that he believes that mother is trying to stay sober and that he can often tell if she is using drugs. J.A. denied witnessing any domestic violence between mother and father but stated that he believed mother's version of the events.

{¶ 18} During cross-examination, J.A. admitted that there was no current home study on file and that he did not know the birthdays of the children. J.A. also acknowledged that mother and the children were gone for about three weeks in February and that since March 5, 2017, she was residing with his daughter (her mom.)

{¶ 19} J.A. also stated that he would abide by any orders the court would put in place including mother's and father's access to the children. J.A. stated that he waited

6.

until May 2017 to file the complaint for legal custody because no other family members came forward.

{¶ 20} K.F., mother's mother, testified that she has had custody of mother's oldest son, 11, since he was a baby. K.F. indicated that her family was unable to take the children at issue due to space and financial concerns.

{¶ 21} K.F. stated that she and mother's relationship had been strained in the past (to the point of not speaking) but that mother has matured, she is respectful, and she is "doing the things she's supposed to do." K.F. testified that the February 9, 2017 altercation between mother and father was the first incident she knew of. K.F. surmised that had the incident not happened, mother would not have missed her drug counseling appointments and not been dismissed from the program; she then would not have suffered from withdrawal. K.F. testified that mother is now back on track and is attending all her classes and counseling sessions.

{¶ 22} Regarding her father's petition for legal custody, K.F. stated that she fully supports it and is willing to help with the children. K.F. indicated that if mother were to start using drugs again, she would not let her around the children and would call LCCS.

{¶ 23} During cross-examination, K.F. explained that she got legal custody of mother's oldest child in 2007, when he was nine months old. Thereafter, LCCS called and asked her to take her second grandson after mother admitted to being addicted to heroin. K.F. was aware of domestic violence between mother and second son's father.

7.

K.F. testified that since 2010, she believes mother's longest period of sobriety was when she was pregnant with Mal.A.

{¶ 24} Mother testified that she has had substance abuse issues since 2010, and that when she had her first child at 15, she was immature, irresponsible, and just wanted to be a normal teen. Mother stated that in 2010, when her second son was seven months old, she began using fentanyl after her son's father was sentenced to a significant prison term. She stated that she did not know that it was heroin. After LCCS involvement, the child was placed in the custody of a relative.

{¶ 25} In 2014, LCCS opened a new case involving Maj.A. Mother stated that from September 26, 2014, until February 14, 2017, she remained sober (though using methadone) which also allowed her to take her son Mal.A. home from the hospital following his birth and reunite with Maj.A.

{¶ 26} Mother stated that due to the February 9, 2017 altercation with father she missed her drug counseling appointment and her dose of methadone, including her "take-home" doses. Mother testified that attendees had to be "extremely compliant" (including two counseling appointments per week) in the program to be eligible for take-homes. Mother stated that because she missed an appointment they were requiring that she attend daily counseling again.

{¶ 27} Upset that she had to attend daily and deciding that she wanted to stop using methadone altogether (she had been tapering), appellant stopped attending the program. Mother stated that she did not believe that the withdrawal symptoms would be

8.

bad but that it was the worst withdrawal she had ever experienced. Mother testified that she started using fentanyl to ease the symptoms but that after a few days she went to the hospital. After three days in the hospital she was released and reengaged in treatment and methadone use. Mother stated that she had been sober since February 18, 2017, and has attended daily counseling. Mother also stated that she initiated domestic violence classes on her own.

{¶ 28} Mother was questioned about the time around her hospitalization and the fact that father had the children. She denied that they were with him continuously for three to four weeks. Mother did acknowledge that father had them at the time of the altercation and during her hospitalization. She also admitted that she lied to hospital personnel when she told them that the children were with her mother.

{¶ 29} Mother was also questioned about why, if her last use of fentanyl was on February 18, 2017, she tested positive on February 24 and March 2, 2017. Mother replied that she believed that the drug could stay in the body for a few weeks. Thereafter, appellant was questioned about an intervening drug test, on February 27, when she tested negative for opiates. She initially denied providing a urine sample on that date but later admitted to the testing.

{¶ 30} The GAL for the children testified next. She stated that she was first appointed for the family in 2010 for mother's child, D.W. She was appointed to Maj.A.'s case in 2014, and Mal.A.'s case in 2015. As to great-grandfather's request for legal custody, the GAL stated that she did not believe that it would be in the children's best

9.

interests. The GAL explained that he is a dedicated great-grandfather, but she did not believe he was in a place to raise a one and a two-year old.

{¶ 31} The GAL was asked whether she would be opposed to a case plan for mother. She could not say that she would be opposed but noted that "we've been down this road a few times." The GAL elaborated that mother completed her 2010 case plan services but that she had been using narcotics prior to Maj.A.'s birth, and the baby suffered serious medical issues and severe withdrawal. The GAL stated that mother is pregnant again, had been using drugs, was still on methadone, and was still living with relatives.

{¶ 32} The GAL testified that she believed that an award of permanent custody to LCCS was in the children's best interests because although mother has been through all the services offered by LCCS, she continued to make poor decisions, and she had not been honest with either LCCS or others in her life. The GAL's report mirroring her testimony was admitted into evidence.

{¶ 33} During cross-examination, the GAL agreed that the children were bonded with mother and that they interact appropriately with each other. It also appeared that they were up-to-date on immunizations and had no other health concerns.

{¶ 34} The GAL agreed that during mother's longest period of sobriety—from September 2014 to February 2017, she appeared motivated to remain sober. When asked about the fact that mother stopped taking methadone following the February 2017 domestic violence incident, the GAL indicated that she was more concerned that she

10.

stopped the methadone when she was far along in her pregnancy due to the withdrawal effects. The GAL agreed that going to the hospital was a good decision.

{¶ 35} Following the parties' closing arguments, the trial court granted LCCS' complaint for permanent custody and denied J.A.'s complaint for legal custody. The court filed its judgment entry on the adjudication and disposition on June 16, 2017. After adjudicating that the children were dependent, the court then proceeded to its dispositional findings. The court first found that mother's chemical dependency was so severe that she was unable to provide an adequate permanent home for the children, R.C. 2151.353(A)(4) and 2151.414(E)(2). The court further found that father failed to participate in the proceedings and had a criminal case pending for domestic violence against mother, R.C. 2151.353(A)(4) and 2151.414(E)(16). The court found that there were no suitable relatives able to accept placement of the children and that, under R.C. 2151.414(D)(1)(a),(b), (d), it was in the children's best interests to award permanent custody to LCCS.

{¶ 36} Mother and father appealed and raise similar assignments of error, respectively, as follows:

> The trial court's finding that the children could not be returned to appellant within a reasonable time was not supported by clear and convincing evidence.

The trial court's decision was against the manifest weight of the evidence.

{¶ 37} R.C. 2151.353 provides, in relevant part:

(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *.

(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. * * *."

{¶ 38} The factors in R.C. 2151.414(E), which were relied upon by the trial court provide:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all the relevant evidence. If the

court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

* * *.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *.

(16) Any other factor the court considers relevant.

{¶ 39} As set forth in the above-quoted statutory sections, the trial court's findings must be supported by clear and convincing evidence. The Ohio Supreme Court has held that clear and convincing evidence is:

[T]hat measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as

is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 40} Further, when reviewing the juvenile court's judgment under a manifest weight of the evidence standard, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When weighing the evidence, "we defer to the trial court's determinations on matters of credibility, which are crucial in these cases, where demeanor and attitude are not reflected well by the written record." (Citations omitted.) *In re E.W.*, 4th Dist. Athens No. 17CA10, 2017-Ohio-7258, ¶ 34. *See also In re E.B.*, 10th Dist. Franklin Nos. 16AP-352, 16AP-395, 16AP-443, 16AP-448, 2017-Ohio-2672, ¶ 50-51.

{¶ 41} Mother argues that she had been compliant with her substance abuse treatment until the unforeseeable circumstance of the domestic violence incident which caused her to miss her methadone dose and created a domino effect resulting in her relapse. We disagree and conclude that the court's finding as to mother under R.C. 2151.414(E)(2) was supported by clear and convincing evidence. The facts at issue took

place just a few months after LCCS terminated protective supervision of the children. Mother admitted that she stopped taking methadone while pregnant rather than attending treatment every day. She admitted to using fentanyl prior to admitting herself to the hospital and tested positive for fentanyl after her withdrawal period was over and she was discharged from the hospital. Following the domestic violence incident, mother stayed with father for three days and lied about the how long the children had remained with father.

{¶ 42} Further, we cannot say that the court erred when it concluded that the termination of father's parental rights was in the children's best interests. The court found R.C. 2151.414(E)(16) applicable in that father failed to complete any of the prior case plan requirements and was the perpetrator of domestic violence against mother. Further, father failed to attend the dispositional hearing which also evidenced a lack of commitment to the children.

{¶ 43} Accordingly, we find that the trial court's judgment is supported by competent, credible evidence and is not against the manifest weight of the evidence. Mother's and father's assignments of error are not well-taken.

{¶ 44} On consideration whereof, we find that substantial justice was done the parties complaining, and the decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellants are ordered to equally pay the court costs of this appeal.

Judgment affirmed.

15.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
James D. Jensen, J.                          JUDGE
CONCUR.

_____
JUDGE